UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EMILY MOWRY,

          Plaintiff,                  DECISION & ORDER
                                                  18-cv-6108-JWF

          v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.
_____

## Preliminary Statement

Plaintiff Emily Mowry ("plaintiff" or "Mowry") brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). See Compl. (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See Docket ## 9, 12. For the reasons that follow, plaintiff's motion for judgment on the pleadings (Docket # 9) is **denied** and the Commissioner's motion for judgment on the pleadings (Docket # 12) is **granted**.[1]

---

[1] For purposes of this Decision and Order, the Court assumes the parties' familiarity with the medical evidence, the ALJ's decision, and the standard of review, which requires that the Commissioner's decision be supported by substantial evidence. See Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed), cert. denied, 551 U.S. 1132 (2007)).

1

## Procedural History

Plaintiff filed her applications for DIB on September 27, 2014 and for SSI on October 21, 2014, alleging disability beginning on July 19, 2014. Administrative Record ("AR"), (Docket # 6) at 163-68, 183-88. Plaintiff's claims were initially denied on December 19, 2014. AR at 63-82. Plaintiff, her attorney, and a vocational expert appeared before Administrative Law Judge Paul Gaughen ("the ALJ") on August 25, 2016 for a video administrative hearing. See AR at 25-60. The ALJ issued an unfavorable decision on December 12, 2016. AR at 7-24. The Appeals Council denied plaintiff's request for review of the ALJ's decision on December 4, 2017. AR at 1-6. Plaintiff commenced this action on February 2, 2018 (Docket # 1) and filed her motion for judgment on the pleadings on September 6, 2018 (Docket # 9). The Commissioner filed its motion for judgment on the pleadings on October 24, 2018 (Docket # 12) and plaintiff replied on December 14, 2018 (Docket # 14).

## Factual Background

Plaintiff was 32 years old at the time of her hearing. AR at 34. She alleges severe back pain stemming from two unrelated car accidents. Pl.'s Mot. (Docket # 9), at 7-8. She testified that her legs feel weak if she stands for too long (AR at 39) and her back "locks up" if she sits for too long (AR at 34). Plaintiff told the ALJ that she could stand for 15 minutes at a time, walk for 20 minutes at a time, sit for up to 30 minutes and lift 15 to

2

20 pounds. AR at 42-45. As to her non-exertional limitations, Mowry has been in mental health treatment for depression and anxiety. AR at 48. She is able to cook, clean, and do the dishes and her laundry, but has difficulty doing these activities on a "bad day." AR at 42, 50, 293. Mowry reported her hobbies are reading, watching TV, painting, spending time with friends, going to appointments, and going on short walks. AR at 293. Mowry lives with and cares for her 13-year-old daughter. See AR at 34, 42, 48-50.

The ALJ found plaintiff's degenerative disc disease, depression, and anxiety disorder to qualify as severe impairments. AR at 12. Based on the evidence, the ALJ assigned plaintiff a residual functional capacity ("RFC") that limited plaintiff to light work with the ability to carry up to 20 pounds frequently. AR at 14. The ALJ further limited plaintiff to occasional postural adjustments and crawling, squatting, and repetitive kneeling would be "awkwardly done and not at a rapid pace." AR at 14. According to the assigned RFC, plaintiff can occasionally bend and stoop and stand or walk short distances five hours a day for no more than two hours at a time. AR at 14. Plaintiff can sit for six hours a day for no more than two hours at a time. AR at 14. The RFC prohibits plaintiff from working in fast paced production or a dangerous industrial setting and from engaging in commercial driving. AR at 14-15. Plaintiff can learn and apply simple to moderately detailed information and instructions with no more than

3

six steps but cannot do complex multitasking. AR at 15. The ALJ determined that plaintiff was "best suited to work having clear procedures which are not subject to frequent, significant changes" unless they are well announced and planned for. AR at 15. Finally, it was the ALJ's opinion that "[i]n work related arenas anxiety and depression do not present difficulties with maintaining attention or concentration or social interaction." AR at 15.

## Discussion

In this appeal, plaintiff contends the ALJ erred by (1) assigning an RFC that fails to properly account for plaintiff's stress limitations; (2) giving only "some weight" to the only physical functional limitations opinion in the record; and (3) improperly evaluating plaintiff's credibility. For the reasons that follow, the Court disagrees with plaintiff and concludes that the ALJ's opinion was supported by substantial evidence.

Plaintiff's Stress Limitations and The Treating Physician Rule: The treating physician rule, set forth in the Commissioner's own regulations, "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources."). However, the treating physician rule does not apply to non-acceptable medical sources such as licensed masters of social work

4

("LMSW"). Burnette v. Astrue, No. 12-CV-6270T, 2013 WL 3422447, at *12 (W.D.N.Y. July 8, 2013).

Plaintiff contends that while the ALJ's RFC did include highly specific limitations relating to work stress, the limitations were crafted without support in the record and thus without regard for whether they actually correlated to plaintiff's ability to handle stress. Plaintiff argues that the best evidence for plaintiff's stress limitations was the opinion of social worker Jamie Castellano, LMSW, plaintiff's therapist of three years, which the ALJ improperly gave little weight. Docket # 9, at 13-16; AR at 476. LMSW Castellano opined that plaintiff would be unable to make simple work-related decisions for 11 to 20 percent of the workday and could not work in coordination with others without distraction more than 20 percent of her workday. AR at 478. Plaintiff would be unable to complete a normal workday or week without interruptions from psychologically based symptoms or perform at a consistent pace without an unreasonable number of rest periods for more than 20 percent of her workday. AR at 478. It was also LMSW Castellano's opinion that plaintiff's inability to deal with normal work stress would preclude performance at her job more than 20 percent of the workday and that her inability to respond appropriately to changes in a routine work setting would preclude performance 11 to 20 percent of the workday. AR at 479.

Because LMSW Castellano was not a treating source subject to the treating physician rule, the ALJ was not required to give LMSW

5

Castellano's opinion controlling weight. The ALJ said he gave LMSW Castellano's opinion little weight because: the record did not support her finding that plaintiff would be off task 10 to 20 percent of the day; plaintiff's exams showed she was cognitively intact, alert, and oriented; and plaintiff's reports of socializing with a friend and using public transportation were inconsistent with the stated limitations. AR at 17-18. These were sufficiently good reasons for discounting LMSW Castellano's opinion. See Tanner v. Comm'r of Soc. Sec., 5:17-CV-466 (ATB), 2018 WL 2727872, at *7 (N.D.N.Y. June 5, 2018) (ALJ properly discounted opinions of nurse practitioner and LMSW who treated plaintiff for depression and anxiety where record lacked support for opinion that plaintiff would be "off task twenty percent of the workday" and where limitations were inconsistent with plaintiff's daily activities such as walking, shopping, and driving long distances).

The ALJ correctly determined that the few treatment notes that are found in the record from LMSW Castellano or her place of work[2] support LMSW Castellano's opinions on plaintiff's limitations. The notes that are in the record state that on exam plaintiff had no perceptual disturbances, had clear, organized thought processes, was cognitively intact, had fair judgment, and

---

[2] The treatment notes are those of Nurse Practitioner Kathe Klein who works at Wayne Behavioral Health Network with LMSW Castellano and who agreed with LMSW Castellano's medical source statement. See AR at 482.

6

had fair to good moods. AR at 451-62. Other medical evidence in the record, such as the opinion of consultative examiner Yu-Ying Lin, Ph.D., which the ALJ gave great weight, also did not support LMSW Castellano's opinion. Dr. Lin found that plaintiff could maintain attention and concentration, relate adequately with others, and that plaintiff was moderately limited in appropriately dealing with stress. AR at 293. It was Dr. Lin's opinion that the "[r]esults of the examination appear to be consistent with psychiatric problems, but, in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." AR at 294.

Moreover, despite ostensibly assigning LMSW Castellano's opinion "little weight," the RFC actually does take into account many of the more extreme limitations about which LMSW Castellano opined. For example, where LMSW Castellano said that plaintiff would be precluded during less than 10 percent of the workday from maintaining attention in two hour segments and from maintaining regular attendance, the RFC provided for plaintiff to have "regular work hours with a lunch period to split the shift" and for plaintiff to not do any standing or sitting activity for more than two hours at a time. AR at 14. While LMSW Castellano opined plaintiff was precluded from performing at a consistent pace without an unreasonable number and length of rest periods for more than 20 percent of the workday, the RFC accounts for the limitation by preventing plaintiff from being tasked with any fast-paced

7

production demands and requires breaks in the middle of her shift. Id. Further, where LMSW Castellano noted that plaintiff would be precluded from responding appropriately to changes in a routine work setting for 11 to 20 percent of the workday, the RFC provides that plaintiff can "adjust to changes that are fundamental or significant occasionally if well announced and planned for." AR at 15. In sum, the ALJ was not required to give LMSW Castellano's opinion controlling weight and provided sufficient reasons for not doing so. Even so, many of LMSW Castellano's limitations are accounted for in the RFC.

Substitution of Lay Opinion and Duty to Develop the Record: Plaintiff next contends that it was error to give consultative examiner Seema Khaneja, M.D.'s opinion only "some weight" because it was the only medical source statement in the record pertaining to plaintiff's physical limitations. Docket # 9, at 16-20. According to plaintiff, this resulted in the ALJ improperly substituting his lay opinion for that of a medical professional in crafting the RFC. Plaintiff argues that there was thus a gap in the record which the ALJ was required to further develop.

While an ALJ is free to choose between properly submitted medical opinions, he may not substitute his own lay opinion for those of medical experts. Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998); see also Oatman v. Comm'r of Soc. Sec., No. 7:13-CV-595 (TJM/TWD), 2014 WL 4384986, at *6 (N.D.N.Y. Sept. 4, 2014) ("It is improper for the ALJ to make any sort of medical

8

determination or to set [his] own expertise against that of the treating physician."). The duty to develop the medical record is particularly important in cases where "the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed," Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996))), or where there is an "obvious gap" in the record. Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."). However, it does not constitute a substitution of lay opinion when an RFC does not perfectly correspond to a given medical opinion. See Kikta v. Comm'r of Soc. Sec., 5:15-CV-60 (DNH/ATB), 2016 WL 825259, at *8-9 (N.D.N.Y. Feb. 9, 2016) ("[T]here is no requirement that the ALJ pick one RFC and use that particular evaluation in its entirety." (citing Matta v. Astrue, 508 F. App'x. 53, 56 (2d Cir. 2013)).

Here, the ALJ did not abdicate his duty to develop the record further. Dr. Robert Ng, plaintiff's treating doctor for her back pain, actually provided a medical source statement. However, the statement was deliberately incomplete as Dr. Ng crossed out many sections with the notation that Dr. Ng "do[es] not perform functional capacity evaluations." AR at 463-67. Where the record lacks a medical source statement from a treating doctor after an

9

attempt to obtain one has been made, the ALJ's remedy is to order a consultative examination, which the ALJ had already done. See 20 C.F.R. § 416.912(b)(1)-(2); Weed Covey v. Colvin, 96 F. Supp. 3d 14, 29 (W.D.N.Y. 2015) ("Encompassed in this duty [to develop the record] is the requirement that an ALJ assemble the claimant's complete medical history and re-contact treating physicians or obtain consultative examinations where the information received is inadequate to determine whether the claimant is disabled."). The ALJ did not improperly substitute his lay opinion by formulating an RFC after giving Dr. Khaneja's opinion "some weight." Even if a gap in the record did exist because Dr. Ng refused to provide the requested information, the ALJ made every reasonable effort to fill that gap.

Credibility Analysis: Finally, plaintiff argues that the ALJ improperly evaluated her credibility. "[W]hile an ALJ 'is required to take the claimant's reports of pain and other limitations into account, 20 C.F.R. § 416.929,' he or she is 'not require[d] to accept the claimant's subjective complaints without question.'" Campbell v. Astrue, 465 F. App'x 4, 7 (2d Cir. 2012) (quoting Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010)). When an ALJ identifies a conflict between the plaintiff's testimony about her symptoms and the objective medical evidence in the record, that "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7p, 1996 WL 374186.

The ALJ sufficiently set forth specific reasons for discounting plaintiff's credibility here. The ALJ wrote that "while the claimant has demonstrated decreased range of motion, she is in no need of an assistive device, continues to drive, paints, socializes, and has reported feeling pretty good." AR at 18. The ALJ correctly noted that the objective findings of the nature of plaintiff's back pain were inconsistent with the extent of her own stated abilities and daily activities. Id. For example, plaintiff testified that she could lift 15 to 20 pounds (AR at 43), do her laundry and the dishes (AR at 50), and play video games with her daughter (AR at 49). She told the consultative examiner that she can "dress, bathe, and groom herself," cook, clean, and shop with some difficulty. AR at 293. She can take public transportation and spends her days "reading, watching TV, painting, spending time with a girlfriend, going to groups and appointments, and taking short walks." AR at 293. The ALJ's assessment of plaintiff's credibility was supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 401 (1971) (finding that substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)).

## Conclusion

It is not for this Court to decide the ultimate question of whether plaintiff is disabled under the Act. "Where the Commissioner's decision rests on adequate findings supported by

11

evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); see Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). Based on the foregoing, plaintiff's motion for judgment on the pleadings (Docket # 9) is **denied** and the Commissioner's motion for judgment on the pleadings (Docket # 12) is **granted**. The Clerk of the Court is directed to close this case.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: September 24, 2019
Rochester, NY